IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| YOLANDA SHERICE HOLDEN, | ) | Case No. 14-43201-DRD-7 |
| Debtor. | ) | |
| _____ | ) | |
| DANIEL J. CASAMATTA, | ) | |
| ACTING UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 15-4040 |
| v. | ) | |
| | ) | |
| YOLANDA SHERICE HOLDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Before the Court for determination in this adversary proceeding are claims asserted in the complaint filed by plaintiff Daniel J. Casamatta, Acting United States Trustee ("Trustee") for denial of discharge against debtor Yolanda Sherice Holden ("Debtor"), pursuant to 11 U.S.C. §§ 727(a)(2)(A) & (B) and (a)(4). This Court has jurisdiction over the complaint under 28 U.S.C. § 1334(b) and § 157(a) and (b). This is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(J). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that that Debtor has made false oaths and should be denied a discharge pursuant to § 727(a)(4)(A).[1]

---

[1] Because the Court finds, as noted below, that Plaintiff has established, by a preponderance of the evidence, the grounds necessary for denial of discharge under § 727(a)(4)(A), the Court will not rule on Plaintiff's other claims under §§ 727(a)(2)(A) & (B). The Court notes that it would likely find one or more of the other claims also persuasive, particularly the claims for concealing the preferential transfer and option contract postpetition.

# I. FACTS AND PROCEDURAL BACKGROUND

Debtor filed a bankruptcy petition under Chapter 7 on September 17, 2014 and filed Schedules A-J and a Statement of Financial Affairs ("SOFA"). On October 22, Debtor attended the Section 341 Meeting of Creditors and testified that all of her filings were accurate and complete and contained her assets and liabilities. She also testified that she had not given any money to any family members in the prior two years. On November 24, 2014, Debtor filed amended Schedules I and J. On March 23, 2015, she attended a Rule 2004 Examination. She testified under oath at both proceedings. At the 2004 Exam, Debtor was questioned regarding monthly payments in the amount of $703.88 made to Twilla Lewis' bank account. She testified that Twilla Lewis is her mother and that she had loaned Debtor money to make repairs to her home. Debtor testified that her mother obtained the funds by taking a home equity line of credit from Chase and that she considered the payments she made into her mother's account as a payment to Chase. She further testified that $5,000 was still owed to her mother at the time of her bankruptcy filing and that she had made the monthly payment to her mother since the funds had been loaned to her including during the one year period prior to commencement of her bankruptcy case. She also failed to disclose payments made to her mother, as a family member, on the Trustee's questionnaire.

Also at the 2004 Exam, Debtor testified regarding an option to purchase her residential property that she and her spouse executed in December 2012. The option provided that Debtor had the option to purchase her residence through December 2014 for $168,300. She testified that she had made a down payment of $15,000 at the time of execution of the option that was to be credited towards the purchase price. Debtor failed to disclose the option to purchase on her Schedules or SOFA. On October 31, 2014, Debtor executed a cancellation of the option contract. However, four days later, she executed a new residential lease with an option to purchase which

2

reinstated Debtor's option to purchase her residence for the same amount through June 2015 if certain payment amounts were made. The new option contract also preserved the value of Debtor's original down payment as a credit towards the purchase price.

## II. DISCUSSION AND LEGAL ANALYSIS

### A. General Principles and Burden of Proof

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty. *American Bank of Spickard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo. 1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo. 2003); *Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 456 (Bankr. W.D. Mo. 1999). A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner, II v. Kirchner (In re Kirchner, II)*, 206 B.R. 965, 973 (Bankr. W.D. Mo. 1997).

### B. Making of a False Oath or Account

A debtor may be denied a discharge, pursuant to §727(a)(4)(A), if the debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account. A debtor's signature on the Petition, the Schedules of Assets and Liabilities and Statement of Financial Affairs, verified and made under penalty of perjury pursuant to Rule 1008, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath. *In re Bren*, 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004), *rev'd on other grounds, In re Bren*, 331 B.R. 797 (B.A.P. 8th Cir. 2005). The proper functioning of the entire bankruptcy

3

process is dependent upon the debtors providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case, so that parties in interest may evaluate the debtor's assets and liabilities and appropriately administer the case. *Bren*, 303 B.R. at 613. A debtor's omission of assets from his bankruptcy schedules or statement of financial affairs may constitute a false oath under §727(a)(4)(A). *Davison,* 296 B.R. at 847.

In order to deny a discharge to a debtor under this subparagraph, the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *Korte v. United States of America Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray*, 295 B.R. at 343; *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D. Mo. 2002). A series or pattern of errors or omissions may have the effect of giving rise to an inference of intent to deceive. *Bren*, 303 B.R. at 614; *Gray*, 295 B.R. at 344. An omission or false statement is considered material if it relates to the debtor's business transactions or estate or concerns the discovery of assets or the existence or disposition of property. *Palatine Nat'l Bank of Palatine, Ill. v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990); *Korte*, 262 B.R. at 474; *Gray*, 295 B.R. at 345. The threshold of materiality is fairly low. *Cepelak, Jr. et al v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). Section 727(a)(4)(A) provides a harsh penalty for a debtor who intentionally secrets information from the court, the trustee and creditors. The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts. *Sears*, 246 B.R. at 347 *citing Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992).

Plaintiff maintains that Debtor intentionally made material representations that constitute a

false oath or account by failing to disclose: (1) her mother as a creditor on Schedule F and that she had made monthly payments to her mother for at least the year prior to filing bankruptcy and (2) that she had an option contract to purchase her residence.

Debtor admits that she owed her mother money from two loans in the aggregate amount of more than $11,000, still outstanding at the time of filing bankruptcy. She also owed her mother for the line of credit her mother borrowed from Chase and loaned to Debtor. She admitted that she had been making monthly payments into her mother's bank account to pay her back on this loan. However, Debtor failed to list her mother as a creditor on Schedule F, offering the explanation that she did not view her mother as a creditor. In addition, Debtor did not list the payments made to her mother in response to Questions 3(a) and 3(c) on the SOFA which specifically asked if she had made any payments to insiders. Finally, when directly asked at the 341 Creditors Meeting if she had given any money to any family members in the prior two years she denied having done so. All of these statements were false

Debtor also failed to list anywhere on her Schedules the option contract to purchase her residence. It arguably could have been listed on Schedule A as an interest in real property, on Schedule B as an intangible contract right or on Schedule G as part of the lease agreement (which she did disclose) with an explanatory note. Debtor chose to do none of these things and made no mention of her right to acquire the property by exercising the option or that she had already made a substantial deposit toward the option. It is not for the Debtor to determine whether property or a property interest has value and should be administered, but to disclose the property owned by her or in her possession, and let the creditors and the trustee determine its value and whether it is worthy of being administered.

In addition to determining that the statements made in the schedules and statement of financial affairs were false or omitted, the Court must also find that the statements or omissions

were material and made knowingly and fraudulently. These omissions are clearly material, relating as they do, to debts of the Debtor and also to the discovery of assets which might be used to satisfy the claims of creditors. As observed above, for these purposes the bar of materiality is set rather low.

As stated above, because a debtor is unlikely to testify that he knowingly and fraudulently made a false statement or oath, a court may make a finding of actual intent based on circumstantial evidence or on inferences drawn from a course of conduct. *Gray*, 295 B.R. at 343-44. In addition to circumstantial evidence, "statements made with reckless indifference to the truth" may be regarded as intentionally false. *Id.* Here, the evidence of false oath, which Plaintiff asserts in support of an inference of fraudulent intent by Debtor, may be circumstantial, but it is also substantial.

The Court is more likely to be able to infer such intent if there are multiple omissions or multiple occasions to disclose, none of which the Debtor took advantage of. Both situations exist in this case. The Debtor failed to disclose the debt to her mother, the payments to her mother and the deposit or the option contact. She failed to disclose any of these matters despite having multiple opportunities to disclose each. The Debtor either denied or failed to disclose relevant facts on her Schedules of Assets and Liabilities, the Statement of Financial Affairs, the questionnaire completed in response to the request of the trustee and her testimony at the § 341 meeting.

As to the disclosure of the preferential payments to her mother, this failure could not have been inadvertent. A substantial amount of money was involved. She admitted that each month for the entire year prior to the filing of the petition, she deposited more than $700 into her mother's account. The aggregate amount is thus in excess of $8,000. Also, the regularity and frequency of the payments make it impossible to believe that this failure to disclose was inadvertent. She

made these payments over a course of several years.

The Debtor offers a number of unpersuasive explanations for her failure. She initially said that she was "not sure" what she was thinking. She justified her failure to disclose payments in response to question 3.c. on the Statement of Financial Affairs, claiming she did not understand what the term "insider" meant. However, she similarly failed to disclose these payments in response to question 3.a. which asked for payments to any creditor. She claims she did not think of her mother as a creditor. It is hard to consider this explanation as having been made in good faith in that it is clear that she was and not just on the Chase loan. She admitted she owed her mother more than $11,000 on two separate loans made some time ago which were still outstanding. Yet, she still did not list her mother as a creditor. She initially asserted that she was paying Chase not her mother, but then admitted that the money was placed directly in her mother's bank account and withdrawn by Chase electronically from that account. It is clear that this was a loan to her from her mother which she was repaying and cannot reasonably be construed otherwise. The money was borrowed by her mother from Chase under a home equity loan with the proceeds loaned to the Debtor. It was that loan that she was in the process of repaying and those payments she failed to disclose. Finally, Debtor was asked a much clearer question on the trustee questionnaire. Specifically, Debtor was asked if she had paid any money to a relative in the year and a half prior to filing. Despite the fact that she had paid her mother more than $8,000, she said no.

Much the same is true with regard to the option contract and the deposit payment. Once again, these disclosures could hardly have been inadvertent. She testified that a major concern entering the bankruptcy proceeding was retaining her interest in the home. Considering it was foremost on her mind, it is difficult to understand how she could have failed to disclose essential facts relating to it. This is a substantial transaction involving a significant amount of money.

7

She had already made a deposit of $15,750 on the option.

Once again, the Debtor's attempted explanations for her failure to disclose are unpersuasive. Initially, it is not clear precisely why she failed to disclose. At one point, she said it "did not occur to" her. In response to questioning from her counsel, she said that she thought that she could not exercise the option and had no right to the deposit, but the trustee might have and it was for her to decide, a decision she could not make because the Debtor failed to disclose the relevant facts. Once again, a much simpler and more straight forward question was posed to her in the trustee questionnaire, a question to which she once again gave a false answer. She was asked if she had any agreement regarding the purchase or sale of property. She clearly did, but answered in the negative.

Finally, her testimony in response to questioning by her own counsel demonstrates Debtor had a predisposition not to disclose any facts related to the option contract and deposit that might have created a problem for her. As noted above, she testified that her major concern in the bankruptcy was preserving her interest in the house. She also testified she did not want to lose the lease. Accordingly, her mindset was to make certain that the bankruptcy proceeding did not interfere in any way with her continued occupancy and plan to acquire this real property. Specifically, she admitted that she did not want to disclose the lease itself or list the landlords as creditors, despite the fact that Schedule G clearly and unequivocally requires such a disclosure. She did not do so until her counsel told her she was obligated to do so. Even then, she did not schedule the option, but only the lease itself, and did not tell her own counsel about the existence of the option. Instead, she immediately participated in a scheme to effectively destroy the option by canceling the existing lease and option contract and entering into a new lease with option to purchase on essentially the same terms, an option she subsequently exercised. Debtor asserts that cancelling the existing lease and executing a new one was a strategy initiated by the landlord.

First, the Court notes that the landlords did not testify to confirm this assertion. Second, even if the Court assumes this to be true, it is immaterial. It matters not that Debtor did not initiate the cancellation and execution of new documents. Her willing participation in this, despite knowing that she had been specifically asked just days earlier whether she had an interest in acquiring property, an inquiry to which she had given a false answer, is indicative of her intent.

The significant amount of information which Debtor failed to disclose in her schedules and statement of financial affairs warrants the Court drawing an inference that she acted either recklessly or intentionally, either conclusion warranting a finding of fraudulent intent and a denial of discharge. In the case of each item discussed above, Debtor admitted failing to disclose information on her schedules. In several instances, Debtor offered no explanation for the omission. In several other instances, Debtor offered explanations which were unsupported by evidence, unreasonable or insufficient as a matter of law.

Moreover, Debtor is not completely unsophisticated as she has is an attorney. As Plaintiff argues, all of these things support the Court's finding that Debtor's omissions were not inadvertent. Even if the Court were to take Debtor's statements as true, these facts alone do not excuse Debtor from reviewing her schedules to insure that they are complete and accurate. *See Gray*, 295 B.R. at 344 (debtor's involvement in a stressful and acrimonious divorce did not excuse her failure to review schedules to insure their accuracy and honesty).

### III. CONCLUSION

In summary, the Court finds that Debtor omitted numerous material matters from her Schedules of Assets and Liabilities and her Statement of Financial Affairs and falsely testified under oath that her Schedules and SOFA were true, accurate and complete and falsely testified at the §341 Meeting. Given the numerous omissions, coupled with Debtor's inadequate explanations therefore, the Court finds that Debtor is not entitled to a discharge pursuant to

§ 727(a)(4)(A).  For all the reasons stated above, Debtor will be denied a discharge.  A separate order will be entered in accordance with Bankruptcy Rule 9021.


DATED:  December 8, 2015              /s/ Dennis R. Dow
                                      HONORABLE DENNIS R. DOW
                                      UNITED STATES BANKRUPTCY JUDGE


Copies to:

Adam E. Miller
Neil S. Sader